UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARIA PEREZ,

      Plaintiff,

v.                                              Case No: 8:15-cv-2064-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## ORDER

Plaintiff, Maria Perez, seeks judicial review of the denial of her claims for a period of disability, disability insurance benefits, and supplemental security income benefits. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A.      Procedural Background

Plaintiff filed applications for disability insurance benefits and supplemental security income benefits on April 6, 2011. (Tr. 173–177, 179–187, 259.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 94–95, 98–126.) Plaintiff then requested an administrative hearing. (Tr. 127–128.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 26–41.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and, accordingly, denied Plaintiff's claims for benefits. (Tr. 8–20.) Subsequently, Plaintiff requested review from the Appeals

Council, which the Appeals Council denied. (Tr. 1–7.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

**B.      Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1961, claimed disability beginning on January 1, 1999. (Tr. 173–202.) Plaintiff has a high school education. (Tr. 19.) Plaintiff has past relevant work experience as a cashier. (Tr. 19.) Plaintiff alleged disability due to anxiety, depression, diabetes, joint pain, psoriasis, hearing problems, and a bulging, ruptured, herniated disc in her back. (Tr. 176, 180.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since January 1, 1999, the alleged onset date. (Tr. 13.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, osteoarthritis, and coronary artery disease status post myocardial infarction. (Tr. 13.) However, the ALJ found Plaintiff's additional impairments of sinusitis, hypertension, urinary tract infection, diabetes, diabetic hypoglycemia, retinopathy, depression, dysthymic disorder, and anxiety to be non-severe. (Tr. 14.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16.)

The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform the full range of light work, including lifting and carrying twenty-five pounds occasionally and ten pounds frequently and sitting and standing for six hours in an eight-hour workday. (Tr. 16.) Further, the ALJ found that Plaintiff has no pushing, pulling, "manipulative," visual, communicative, postural, or environmental limitations. (Tr. 16.) In formulating Plaintiff's RFC,

the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not fully credible.  (Tr. 17.)

The ALJ concluded that, given Plaintiff's RFC, Plaintiff is capable of performing her past relevant work as a cashier.  (Tr. 19.)  Additionally, the ALJ determined that, given Plaintiff's age, education, work experience, and RFC, there are other jobs existing in the national economy that Plaintiff is capable of performing.  (Tr. 19.)  Accordingly, the ALJ found Plaintiff not disabled. (Tr. 20.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. § 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a).  Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the

claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience.  20 C.F.R. § 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066.  The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the

correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred by finding that Plaintiff had past relevant work experience as a cashier; (2) the ALJ failed to give appropriate weight to medical opinions regarding Plaintiff's physical and mental impairments; and (3) the ALJ erred by relying on the Medical-Vocational Guidelines to find Plaintiff not disabled because Plaintiff had mental non-exertional limitations.  For the reasons that follow, none of these contentions warrants reversal.

### A.    Plaintiff's Past Relevant Work Experience

Plaintiff's first contends that the ALJ's determination that Plaintiff had past relevant work as a cashier was erroneous because this employment was not substantial gainful activity based on Plaintiff's earnings.  (Dkt. 18 at 6.)  Alternatively, Plaintiff argues that her past work as a cashier at Dunkin' Donuts was a "composite job," not simply a cashier job.  (Dkt. 18 at 6–7.)  Therefore, Plaintiff argues, the ALJ's decision should be reversed and the case remanded with instructions to the ALJ to not consider Plaintiff's past work as a cashier past relevant work.  (Dkt. 18 at 7.)

The Court will first address Plaintiff's alternative argument that the ALJ erred by finding that Plaintiff had past relevant work as a cashier because her duties as a cashier at Dunkin' Donuts exceeded those typically required by a cashier position.  (Dkt. 18 at 6–7.)  At the hearing, Plaintiff testified that her past work as a cashier at Dunkin' Donuts required her to stand for long periods and lift heavy boxes and donuts onto racks.  (Tr. 33.)  Thus, Plaintiff contends, it was error for the ALJ to find Plaintiff capable of performing her past work as a cashier because she is incapable of performing these additional duties.  (Dkt. 18 at 7.)

However, as the Commissioner contends (Dkt. 19 at 16–17), "[t]he regulations require that the claimant not be able to perform [her] past *kind* of work, not that [s]he merely be unable to perform a specific job [s]he held in the past." *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986) (emphasis in original.)   "Accordingly, where the claimant's specific prior job might have involved functional demands and duties significantly in excess of those generally required for such work by employers in the national economy, the claimant must still demonstrate that, in addition to being unable to perform the excessive functional demands actually required by her former job, she cannot perform the functional demands and job duties of the position as generally required by employers nationwide." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010).

Here, the ALJ found, given Plaintiff's RFC, that Plaintiff is capable of performing work as a cashier "as it is generally performed."  (Tr. 19.)   Plaintiff argues that *one* of her cashier jobs required demands exceeding those of a typical cashier job.  (Dkt. 18 at 6.)   However, Plaintiff does not argue that the ALJ's RFC failed to account for Plaintiff's limitations such that Plaintiff would be unable to perform the duties of a *typical* cashier position as generally required by employers nationwide.  *Klawinski*, 391 F. App'x at 775.   Accordingly, the ALJ did not err in this regard.

Next, Plaintiff argues that her detailed earning record "fails to show that [Plaintiff] performed any job at a substantial gainful activity level."  (Dkt. 18 at 6.)   In response, the Commissioner concedes that Plaintiff's detailed earning record shows that Plaintiff did not earn enough money as a cashier to be considered substantial gainful activity.  (Dkt. 19 at 16.)  However, the Commissioner argues that "other evidence," including evidence of "the energy, skill, and physical activity" of Plaintiff's past work demonstrates that Plaintiff's work as a cashier was

substantial gainful activity.  (Dkt. 19 at 15–16.)  The Commissioner does not, however, cite to where this "other evidence" appears in the record.  (Dkt. 19 at 16.)

In the ALJ's decision, the ALJ described Plaintiff's hearing testimony regarding her work experience.  At the hearing, Plaintiff testified that she last worked at Dunkin' Donuts part time as a cashier and team leader in February 2011.  (Tr. 30.)  While at Dunkin' Donuts, Plaintiff testified that she worked six hours per day for between three and five days per week.  (Tr. 30.)  Plaintiff testified that she has also worked as a home health aide in 2009, a collection agent, and a cashier at Popeye's Chicken, Target, and other fast food restaurants.  (Tr. 31.)  Next, the ALJ cited to an unsigned and undated Work History Report that Plaintiff appears to have completed or provided the information for its completion.  (Tr. 19, 262.)  The ALJ stated that the Work History Report indicated that Plaintiff "worked at a 'donut shop' from 2004 to 2011, earning $400.00 per week during the periods in which she was employed."  (Tr. 19.)  Thus, the ALJ concluded that, based on the Work History Report, Plaintiff's "work was performed at substantial gainful activity levels."  (Tr. 19.)

Upon review of the evidence regarding Plaintiff's work history, the Work History Report states that Plaintiff worked as a team leader at a donut shop from 1999 through 2003 and from February 2004 through February 2011.  (Tr. 262.)  From 1999 through 2003, Plaintiff reported earning $300.00 per week, working twenty-five hours per week.  (Tr. 264.)  From 2004 through 2011, Plaintiff reporting earning $400.00 per week, working thirty hours per week.  (Tr. 265.)  This information is consistent with an unsigned and undated Disability Report.  (Tr. 273.)

In a separate Work Activity Report completed by Plaintiff in April 2012, Plaintiff reported working as a cashier at Dunkin' Donuts from January 2004 through February 2011 making $7.25 per hour and working an average of twenty hours per week.  (Tr. 249.)  She reported earning

$524.00 per month in 2010 and approximately $400.00 per month in January and February 2011. (Tr. 249.)  She reported working as a cashier at Target from January 2000 through June 2001, earning $6.00 per hour and working an average of twenty hours per week.  (Tr. 250.)  From January through June 2001 she reported earning $85.30 per month.  (Tr. 250.)

Finally, Plaintiff's detailed earning record shows that Plaintiff earned far less than reported in the Work History Report cited by the ALJ.  (Tr. 213–216.)  As examples, Plaintiff earned the following *yearly* totals from her jobs as a cashier: $512.99 from Target in 2001, $768.00 from Dunkin' Donuts in 2003, $103.50 from Forerunner Donuts, Inc., in 2004, $2,250.34 from Dunkin' Donuts in 2007, $3,815.64 from Dunkin' Donuts in 2008, $106.50 from Popeye's Chicken in 2009, $2,012.39 from Dunkin' Donuts in 2010, and $817.67 from Dunkin' Donuts in 2011.  (Tr. 213–216.)

At issue here is Plaintiff's contention that the ALJ erred by finding that Plaintiff's past work as a cashier was past relevant work because Plaintiff's earning records show that her work as a cashier was not substantial gainful activity.  (Dkt. 18 at 6.)  The claimant bears "the burden of proving that he could no longer perform his past relevant work."  *Jackson*, 801 F.2d at 1293.  In evaluating a claimant's work experience, an ALJ considers the claimant's work performed within the last fifteen years that "lasted long enough for [claimant] to learn to do it, and was substantial gainful activity."  20 C.F.R. §§ 404.1565(a), 404.1560(b)(1).  Substantial gainful activity is work involving "doing significant and productive physical or mental duties . . . for pay or profit."  *Id.* § 404.1510.

A claimant's earnings is the "primary consideration" in evaluating whether the claimant's past work activity is substantial gainful activity.  *Green v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 906, 908 (11th Cir. 2014); 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1).  "The ALJ ordinarily will

consider that the claimant either was or was not engaged in substantial gainful activity if her average monthly earnings are above or below a certain amount established by the Social Security Administration's earnings guidelines." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 524 (11th Cir. 2014); *Green*, 555 F. App'x at 908 (citing 20 C.F.R. § 404.1574(b)(2) and finding that claimant's gross income of more than $25,000.00 gave rise to the presumption that claimant engaged in substantial gainful activity).  "A claimant's earnings show she was engaged in substantial activity, if they average more than the larger of (1) the amount for the previous year," or (2) the amount set forth in the table published by the Commissioner.[1]  *Perez v. Comm'r of Soc. Sec.*, 625 F. App'x 408, 421 (11th Cir. 2015) (finding that the ALJ erred because the claimant's position as an event-worker did not constitute past relevant work "because the wages she earned from that job, $421.75 in 2004 and $391.19 in 2005, did not rise to the level required for substantial gainful activity.").

However, "[e]ven where the claimant's average monthly earnings were below the amount established by the earnings guidelines, if other evidence indicates that the claimant was engaged in substantial gainful activity or that the claimant was in the position to control the amount of wages she was paid, the ALJ can consider other information" to determine whether claimant engaged in substantial gainful activity.  *Eyre*, 586 F. App'x at 524.  Specifically, the ALJ may consider whether the work performed was "comparable to that of unimpaired people in [the claimant's] community who [were] doing the same or similar occupations as their means of livelihood, taking into account the time, energy, skill, and responsibility involved in the work." *Id.* (quoting 20 C.F.R. § 404.1574(b)(3)(ii)).

---

[1] Sections 416.974(b)(2)(ii) and 404.1574(b)(2)(ii), Title 20, Code of Federal Regulations, set forth the formula for calculating the average monthly figure using the national average wage index.  A table showing these calculations is published by the Commissioner.  *See* http://www.socialsecurity.gov/oact/cola/sga.html.

Here, the ALJ relied on one Work History Report showing that Plaintiff earned between $300.00 and $400.00 per week from 1999 through 2011 from her work at a donut shop. (Tr. 262, 264, 265, 273.) However, other evidence in the record, including a separate Work Activity Report completed by Plaintiff and a detailed earnings summary, show that Plaintiff may have been earning $300.00 or $400.00 per *month*, rather than per week. (Tr. 213–216, 249–250.) The ALJ did not address the other evidence regarding Plaintiff's earnings from her work as a cashier in his finding that Plaintiff's past work as a cashier was substantial gainful activity. (Tr. 19.) Because the record contains conflicting evidence regarding Plaintiff's earnings as a cashier, some of which indicates that this employment was not substantial gainful activity, the ALJ's finding that Plaintiff's past work constituted past relevant work is not supported by substantial evidence.

"If a claimant cannot return to her past relevant work, the Commissioner must, at step 5 of the evaluative process, show that there is work that the claimant can perform" either through the testimony of a vocational expert or application of Title 20, Code of Federal Regulations, Part 404, Subpart P, Appendix 2 ("Grids"). *Dixon v. Astrue*, 312 F. App'x 226, 229 (11th Cir. 2009) (remanding to the ALJ to make findings at step five of the sequential process because the ALJ made no step five findings); *Wiles v. Astrue*, No. 8:07-CV-1602-J-TEM, 2009 WL 465027, at *6 (M.D. Fla. Feb. 24, 2009) (remanding upon a finding of error at step four of the sequential process for the ALJ to make findings at step five of the sequential analysis); *Williams v. Astrue*, No. 808-CV-600-T-MAP, 2009 WL 1922210, at *2 (M.D. Fla. July 2, 2009) (finding the ALJ's error at step four of the sequential process harmless because the ALJ "called upon the expertise of a VE [vocational expert] who found Plaintiff capable of performing other jobs . . . in significant numbers in the national economy.").

In this case, although the ALJ concluded that Plaintiff could perform her past work as a cashier, she found, alternatively, "considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant also can perform." (Tr. 19.)  The ALJ then considered the Plaintiff's age, education, and work experience in conjunction with the Grids.  (Tr. 20.)  Specifically, the ALJ found that Plaintiff, who was born on December 17, 1961 (Tr. 29), was thirty-seven on her alleged onset date in January 1999.  (Tr. 19.)  However, the ALJ found that Plaintiff "subsequently changed age category to closely approaching advanced age," which is a person between ages fifty and fifty-four, because Plaintiff was fifty-two at the time of the hearing before the ALJ.  (Tr. 19, 29.)  *See* 20 CFR § 404.1563(d).  The ALJ applied Plaintiff's RFC "for the full range of light work," age, education, and work experience to the Grids, and concluded that the application of the Grids directed a finding of "not disabled."  (Tr. 20.)  As here, when "a claimant's qualifications correspond to the job requirements identified by a rule [in the Grids], the guidelines direct a conclusion as to whether work exists that the claimant could perform," and "[i]f such work exists, the claimant is not considered disabled."  *Heckler v. Campbell*, 461 U.S. 458, 461–462 (1983).  Accordingly, because the ALJ continued with an analysis of step five of the sequential process, to the extent the ALJ erred at step four of the sequential process, such error was harmless.  *See Williams*, 2009 WL 1922210, at *2.[2]

## B.    Weight Accorded to Medical Opinions

Next, Plaintiff argues that the ALJ failed to accord opinion evidence regarding Plaintiff's physical and mental limitations due weight and instead substituted her own opinions for the opinions of Plaintiff's treating physicians and consulting physicians.  (Dkt. 18 at 7–12.)  Medical

---

[2] Plaintiff's contention that the ALJ erred in her application of the Grids at step five of the sequential process is addressed in Section C of this Order.  *See* discussion *infra* Section C.

opinions, which include physician statements regarding the nature and severity of the claimant's impairments, may support the ALJ's determination of whether a claimant suffers from a severe impairment.   20 C.F.R. § 404.1527(a)(2).   When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).   In determining the weight to afford a medical opinion, the ALJ considers the following factors: the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of the examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to support or contradict the opinion.   *Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015).

A treating physician's opinion is "given substantial or considerable weight unless good cause is shown to the contrary." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).   An ALJ's failure "to clearly articulate the reasons for giving less weight to the opinion of a treating physician" is reversible error.   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).   Good cause for giving a treating physician's opinion less weight "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240–1241 (11th Cir. 2004).   Ultimately, the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion.   *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

### 1.    Opinion Evidence Regarding Plaintiff's Physical Limitations

In assessing Plaintiff's RFC and testimony regarding the nature of her pain and symptoms, the ALJ considered opinion evidence from Dr. Cres Rodriguez, an internal medicine and geriatrics

practitioner, and Dr. Jorge Inga, a neurological surgeon.  (Tr. 18.)  Dr. Rodriguez and Dr. Inga completed Residual Functional Capacity Questionnaires as to Plaintiff's physical limitations.  The ALJ gave the opinions of Dr. Rodriguez and Dr. Inga little weight.  (Tr. 18.)  Plaintiff contends that these opinions should have been accepted by the ALJ because the ALJ failed to articulate adequate reasons for discounting these opinions.  (Dkt. 18 at 10.)

In March 2012, Dr. Rodriguez completed a questionnaire regarding Plaintiff's physical RFC.  (Tr. 405–412.)  Dr. Rodriguez stated that Plaintiff has lumbar pain radiculopathy that is "precipitated by walking, standing" and opined that Plaintiff can walk four to five city blocks without rest, sit continuously for two hours and for about two hours out of an eight hour workday, stand continuously for thirty minutes and for less than two hours out of an eight hour workday, and does not need an assistive device.  (Tr. 406, 408, 410.)  Further, he found that Plaintiff needs to walk about ninety minutes of out an eight hour workday, shift positions while working, and take unscheduled breaks, but would be absent from work less than once a month.  (Tr. 409, 411.)  Finally, Dr. Rodriguez found that Plaintiff can frequently lift more than ten pounds, occasionally lift more than twenty pounds, and never lift more than fifty pounds, but has no limitations regarding repetitive reaching, handling, or fingering.  (Tr. 411.)

Three months later, in June 2012, Dr. Inga also completed a questionnaire regarding Plaintiff's physical RFC.  (Tr. 507–514.)  Dr. Inga stated that he has treated Plaintiff since 1999 and that Plaintiff has the diagnoses of lumbar disc protrusions, degenerated disc protrusion, and congenital fusion between certain discs.  (Tr. 507.)  He described Plaintiff's pain as being in the lumbar area, radiating into her lower extremities, and in the cervical area, radiating into her neck and shoulders.  (Tr. 507.)  This pain, Dr. Inga stated, is "partially exacerbated" by actions like coughing, sneezing, or straining.  (Tr. 508.)  He noted that Plaintiff has tenderness, palpitation,

and limitations with her range of motion in her lower cervical spine, but that Plaintiff "has been kept on conservative management with only limited symptomatic control." (Tr. 508.) Dr. Inga found that Plaintiff can walk one city block without rest, sit continuously for thirty minutes and for about two hours out of an eight hour workday, and stand continuously for fifteen minutes and for less than two hours out of an eight hour workday, and does not need an assistive device. (Tr. 510, 512.) He further found that Plaintiff must walk for fifteen minutes out of an eight hour workday, shift positions while working, and take unscheduled breaks about every hour. (Tr. 511.) Dr. Inga found that Plaintiff can occasionally carry ten pounds, but never carry twenty pounds, and has significant limitations with repetitive reaching, handling, or fingering. (Tr. 512.) Finally, Dr. Inga found that Plaintiff would need to be absent from work more than three times per month. (Tr. 513.)

The ALJ accorded the opinions of Dr. Rodriguez and Dr. Inga "little weight" because "the severity of their opined limitations are not supported by the bulk of the objective evidence of record." (Tr. 18.) Specifically, the ALJ found that the opinions were contradicted by treatment notes from Dr. Rodriguez's and Dr. Ranchood Khant's 2013 examinations of Plaintiff, which "show no objective findings indicating disabling symptoms." (Tr. 18.) Further, the ALJ found the opinions inconsistent with the 2012 opinion of medical consultant Gloria Hankins, who found Plaintiff capable of performing light work. (Tr. 18.)

Looking to the objective medical evidence cited by the ALJ (Tr. 18–19), in a February 2012 examination by Dr. Rodriguez, Plaintiff complained of shoulder pain, but denied tingling, numbness, or weakness. (Tr. 477.) Dr. Rodriguez noted that Plaintiff's neck was "supple" and her extremities were negative for clubbing, cyanosis, or edema. (Tr. 477.) Although Dr. Rodriguez noted that Plaintiff had joint stiffness and pain, she had no swelling or cramps. (Tr.

478.)  The narrative portion of the treatment notes shows that the focus of the visit was to discuss the treatment of Plaintiff's diabetes.  (Tr. 478.)  Plaintiff returned to Dr. Rodriguez a couple of weeks later and Dr. Rodriguez noted that Plaintiff continued to experience shoulder pain, but that an MRI did not reveal abnormalities.  (Tr. 474.)  Again, Plaintiff's neck was supple and her extremities were normal and, although Plaintiff complained of joint pain, stiffness, and swelling, she did not report cramping.  (Tr. 474–475.)  Plaintiff was advised as to diet and exercise.  (Tr. 475.)  During a March 2012 examination, Plaintiff was seen by Dr. Rodriguez regarding a lesion under her arm.  (Tr. 470.)  Plaintiff denied joint pain, stiffness, and swelling and her neck was supple and her extremities normal.  (Tr. 470–471.)

During a May 2012 examination, Dr. Inga noted that although Plaintiff had tenderness and palpitation in her mid and lower cervical spine and a restricted range of motion of the cervical spine, her gait was normal and her extremities were strong, although she had some decreased sensation in her lower extremities due to her diabetes.  (Tr. 415–416, 419.)  Further, an MRI showed that she had some degenerated and protruding discs, but her other discs were normal.  (Tr. 417.)  At a hospital visit in June 2012 for pelvic pain, it was noted that Plaintiff had a normal range of motion and strength and had no tenderness, swelling, or deformity.  (Tr. 454–455.)  In May 2013, Plaintiff was examined by Dr. Khant, a cardiologist, after having cardiac surgery.  (Tr. 530.)  Dr. Khant noted that Plaintiff was recovering slowly and had edema in her left leg, which was being treated with medication, and back pain, but no joint pain.  (Tr. 530–531.)  Her neck, back, and musculoskeletal system were noted to be "normal."  (Tr. 530–531.)

The ALJ also considered Dr. Rodriguez's treatment notes from spring and summer 2013, which the ALJ found showed that Plaintiff had "normal sensation and strength."  (Tr. 18.)  In July 2012, Dr. Rodriguez noted that Plaintiff felt "stress" stemming from her step daughter running

away from home and had elevated blood pressure because she was not taking her medications. (Tr. 547.)  Plaintiff had a supple neck, clear chest, and normal heart activity, and her sensation, strength, and extremities were normal.  (Tr. 548.)  In April 2013, Dr. Rodriguez examined Plaintiff after her cardiology surgery and noted that Plaintiff's neck was supple and Plaintiff did not complain of joint stiffness, pain, swelling, chest pain, or leg edema.  (Tr. 543–545.)  In August 2013, Dr. Rodriguez noted that Plaintiff reported pain in her right leg of "mild to moderate" severity, with no associated symptoms.  (Tr. 552.)  Plaintiff had no chest pain or palpitations, leg edema, or joint stiffness or swelling, although she reported joint pain.  (Tr. 552.)  Dr. Rodriguez found Plaintiff's neck supple and her sensation, strength, and extremities normal.  (Tr. 553.)

Finally, the ALJ considered a July 2012 evaluation performed by Dr. Hankins of Disability Determination Services.  (Tr. 80–93.)  The ALJ noted that although Dr. Hankins had not examined Plaintiff, she found Dr. Hankins's opinion that Plaintiff was capable of performing light work to be consistent with the objective medical evidence.  (Tr. 18–19.)

Upon review, the Court finds that the ALJ properly evaluated the opinions of Dr. Rodriguez and Dr. Inga.  First, the ALJ sufficiently articulated his reasons for discounting their opinions. Specifically, he explained that he gave their opinions little weight because they were inconsistent with the objective medical evidence and because Dr. Rodriguez's treatment notes contradicted the severity of limitations he found in his opinion.  *Phillips*, 357 F.3d at 1240–1241 (holding that good cause exists to discount a treating physician's opinion when the opinions were not supported by the evidence and the treating physician's opinions contradicted the physician's own records). Further, the ALJ's decision to discount the opinions of Dr. Rodriguez and Dr. Inga was supported by substantial evidence.  As 2012 and 2013 treatment records of Dr. Rodriguez, Dr. Inga, and Dr. Khant demonstrate, although Plaintiff identified pain and had symptoms stemming from her back

and cardiac conditions and diabetes, the physicians' treatment notes did not reveal issues that would limit Plaintiff's physical capacity to the extent opined by Dr. Rodriguez and Dr. Inga. Although both opinions found that Plaintiff had limitations with walking and standing, the treatment records of Dr. Rodriguez and Dr. Inga, while noting that Plaintiff had pain and tenderness, did not note any abnormalities with Plaintiff's gait, range of motion, or strength. As such, the ALJ's decision to accord the opinions of Dr. Rodriguez and Dr. Inga little weight was adequately articulated and supported by substantial evidence. Therefore, Plaintiff's contention does not warrant reversal.

### 2.      Opinion Evidence Regarding Plaintiff's Mental Limitations

Next, Plaintiff argues that the ALJ substituted her own opinions as to Plaintiff's mental limitations for the opinions of medical consultant Dr. Theodore Weber and treating physician Dr. Inga. (Dkt. 18 at 11–12.) First, Plaintiff cites Dr. Weber's July 2012 disability determination explanation. (Tr. 86–88, 90–82.) Dr. Weber noted that Plaintiff reported a history of depression following her mother's death in 1995, but that Plaintiff is capable of performing self-care and simple household chores, driving, shopping, and managing finances, and uses the computer and phone to socialize. (Tr. 87.) Further, Dr. Weber noted that although Plaintiff had moderate difficulties with maintaining concentration, persistence, and pace, her restrictions regarding daily living and maintaining social functioning were mild and her mental condition was not "worsening." (Tr. 87.) Dr. Weber noted that Plaintiff has "sustained concentration and persistence limitations," but that she "is able to sustain sufficient attention to complete simple routine tasks for an 8 hour day with normal breaks every 2 hours." (Tr. 90.)

Regarding Plaintiff's social interactions, Dr. Weber noted that Plaintiff's ability to interact with the general public was "moderately limited," but that her ability to accept instructions and

criticism from supervisors and get along with coworkers was not significantly limited.  (Tr. 91.) In sum, Dr. Weber found that Plaintiff "can accept direction from a supervisor and maintain adequate relationships with co-workers in work settings with no demand for extensive social interaction" and "will have some difficulty adapting to change, but will be able to function with a stable work assignment."  (Tr. 91.)  Thus, Dr. Weber concluded that Plaintiff's mental impairments posed "some work-related limitations, but do not preclude all work."  (Tr. 91.)

Next, Plaintiff cites Dr. Inga's physical RFC questionnaire, in which Dr. Inga provides opinions regarding Plaintiff's mental limitations.  (Tr. 507–514.)  Dr. Inga noted that Plaintiff "complains of chronic anxiety and depression" and reports that she has "frequent panic attacks." (Tr. 508.)  Dr. Inga noted that depression and anxiety are psychological conditions that affect Plaintiff's physical condition.  (Tr. 509.)  He found that Plaintiff's ability to cope with work stress was "moderate[ly] limit[ed]."  (Tr. 510.)  Finally, in response to a question asking whether Plaintiff has any other limitations that would affect her ability to work "at a regular job on a sustained basis," Dr. Inga stated that Plaintiff "has severe chronic anxiety and depression syndrome with panic attacks that interfere with her normal daily life activities."  (Tr. 513.)

The ALJ considered Dr. Weber's and Dr. Inga's opinions in her analysis of whether Plaintiff's mental impairments, including dysthymic disorder, depression, and anxiety, were severe limitations.  (Tr. 13–16.)  In evaluating Plaintiff's mental limitations, the ALJ first noted that Plaintiff did not receive ongoing treatment from a mental health professional during the relevant time period.  (Tr. 14.)  Next, in a May 2012 psychological evaluation performed by Dr. Jennifer Mendoza at the request of the Florida Department Health, Division of Disability Determinations, Dr. Mendoza noted that although Plaintiff reported feeling depressed and having trouble concentrating, she also reported that she can make simple meals, do laundry, drive, and socialize

with family and while at church.  (Tr. 442–444.)  Dr. Mendoza found that Plaintiff was attentive, friendly, organized, assertive, focused, "oriented as to person and place," and made good eye contact.  (Tr. 443–444.)  Further, Dr. Rodriguez's August 2013 treatment notes stated that Plaintiff had no depression, stress, sleep disturbances, suicidal ideation, or anxiety.  (Tr. 552.)

The ALJ also considered Dr. Rodriguez's RFC assessment.   (Tr. 14.)   In his RFC assessment, Dr. Rodriguez stated that emotional factors did not contribute to the severity of Plaintiff's physical limitations and found that Plaintiff had only "slight limitation[s]" with dealing with work stress.  (Tr. 407–408.)  The ALJ stated that although Dr. Rodriguez is not a mental health professional, he has personally treated Plaintiff for an extended time and his assessments are consistent with the objective medical evidence and Dr. Mendoza's findings.  (Tr. 14.)

As to Dr. Inga, the ALJ accorded his opinions little weight because they "appear[ed] based primarily on the [Plaintiff's] subjective complaints as opposed to objective findings."  (Tr. 14.) The ALJ adequately articulated her reasons for discrediting Dr. Inga's opinions.  Upon review of Dr. Inga's opinions, Dr. Inga prepared a *physical* RFC evaluation and his notes regarding the effect of Plaintiff's mental impairments on her physical capabilities are based on Plaintiff's "complain[t]s" and reports.  (Tr. 508.)  Specifically, he noted that Plaintiff "*complains* of chronic anxiety and depression" and "*tells* [Dr. Inga] she has frequent panic attacks."  (Tr. 508) (emphasis added.)

An ALJ may discredit a treating physician's opinion that is inconsistent with the medical evidence and "appears to be based primarily on [claimant's] subjective complaints of pain." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *Majkut v. Comm'r of Soc. Sec.*, 394 F. App'x 660, 664 (11th Cir. 2010) (affirming an ALJ's giving less weight to a treating physician's opinions where the opinions were "based on [claimant's] subjective complaints").

Further, as noted above, Dr. Rodriguez's August 2013 treatment notes show that Plaintiff did not report mental issues, such as depression, stress, sleep disturbances, suicidal ideation, or anxiety. (Tr. 552.)  Dr. Rodriguez's notes were consistent with his opinions regarding her lack of mental impairments (Tr. 407–408) and Dr. Mendoza's findings that, although Plaintiff reported feelings of anxiety and depression, she was capable of performing basic daily activities and socializing. (Tr. 442–443.)  Therefore, because Dr. Inga's opinions as to Plaintiff's mental limitations were inconsistent with other record evidence and appeared influenced by Plaintiff's subjective reports, the ALJ's decision to discredit her opinions was supported by substantial evidence.

As to Dr. Weber, the ALJ accorded his opinions little weight because Dr. Weber never personally treated Plaintiff and because his opinions were inconsistent with the objective medical evidence.  (Tr. 14–15.)  Plaintiff urges that the case should be remanded with instructions to the ALJ to "adopt the opinion of" Dr. Weber.  (Dkt. 18 at 12.)  However, "[t]he reports of reviewing nonexamining physicians do not constitute substantial evidence on which to base an administrative decision." *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).  Although an ALJ must consider opinion evidence from a State agency non-examining medical consultant, the ALJ is "not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists." 20 C.F.R. § 404.1527(e)(2)(i).

The ALJ explained that he accorded Dr. Weber's opinions little weight because they were inconsistent with the objective medical evidence.  (Tr. 15.)  Like the ALJ's decision to accord Dr. Inga's opinions little weight, the ALJ's decision to give Dr. Weber's opinions little weight is likewise supported by substantial evidence.  Specifically, as the ALJ noted, Dr. Mendoza's 2012 evaluation revealed few objective findings and noted that Plaintiff is able to tend to her basic functioning despite her mental impairments.  (Tr. 15, 442–444.)  Therefore, the ALJ was correct

to consider Dr. Weber's opinions, but was not bound by them, and properly explained his reasons for discrediting them.  Accordingly, Plaintiff's second contention does not warrant reversal.

## C.      The ALJ's Reliance on the Grids

Plaintiff's final contention is that the ALJ erred by applying the Grids at step five of the sequential analysis because the ALJ erred in finding that Plaintiff has no mental non-exertional limitations.  (Dkt. 18 at 13.)  Specifically, Plaintiff argues that because the ALJ failed to give proper weight to the opinions of Dr. Inga and Dr. Weber regarding Plaintiff's mental impairments, the ALJ improperly concluded that Plaintiff has no non-exertional mental impairments.  Thus, because the ALJ should have found that Plaintiff has mental non-exertional limitations, Plaintiff argues that the ALJ was required to illicit the testimony of a vocational expert "to give an opinion as to whether any jobs existed in the national economy" that Plaintiff is capable of performing.  (Dkt. 18 at 13.)  Plaintiff does not, however, identify the mental non-exertional limitations for which the ALJ failed to account.

At step five of the sequential evaluation process, the ALJ must determine whether there are significant numbers of jobs in the national economy that the claimant can perform, given the claimant's RFC, age, education, and work experience.  *Owens v. Comm'r of Soc. Sec.*, 508 F. App'x 881, 883 (11th Cir. 2013) (per curiam).  The Commissioner bears the burden at step five to show the existence of such jobs.  *Id.*  In determining whether the claimant has the ability to adjust to other work in the national economy, the ALJ may either (1) apply the Grids or (2) consult a vocational expert.  *Phillips*, 357 F.3d at 1239–1240.

Exclusive reliance on the grids is not appropriate if either of the following conditions exist: (1) the claimant is unable to perform a full range of work at a given residual functional level or (2) the claimant has non-exertional impairments that significantly limit basic work skills.  *Id.* at 1242.

"It is only when the claimant can clearly do unlimited types of light work . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy." *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989) (quoting *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. Unit A Mar. 1981)).  If the ALJ concludes that the claimant can perform a full range or unlimited types of work at a given exertional level despite any exertional limitations, then the ALJ must next determine whether the claimant's non-exertional limitations affect the claimant's ability to secure employment at the given work level in the national economy.  *Phillips*, 357 F.3d at 1242.  In making this finding, the ALJ must determine whether the claimant's non-exertional limitations significantly limit the claimant's basic work skills—that is, whether the claimant's non-exertional limitations prohibit the claimant from performing "a wide range of work at a given work level."  *Id.* at 1243.  If the ALJ determines that the claimant's non-exertional limitations do not significantly limit his or her basic work skills at the given work level, then the ALJ may rely on the Grids to determine if the claimant is disabled. *Id.*

Exertional limitations are limitations on a person's ability to meet the seven strength demands of sitting, standing, walking, lifting, carrying, pushing, and pulling at the level required by the level of work at issue.  20 C.F.R § 404.1569a(b).  Non-exertional limitations affect a person's ability to meet the other demands of jobs and include mental limitations, pain limitations, and all physical limitations that are not included in the seven strength demands.  *Id.* § 404.1569a(c). Examples of non-exertional limitations include, without limitation, difficulty working due to nervousness, anxiety, depression, maintaining attention or concentration, understanding or remembering detailed instructions, tolerating dust or fumes, or performing manipulative or postural functions.  *Id.* § 404.1569a(c)(1).

The ALJ did not err in his application of the Grids at step five of the sequential process. Exclusive reliance on the Grids is improper when a claimant is unable to perform the full range of work at a given residual functional level.  *Phillips*, 357 F.3d at 1239–1240.  Here, however, the ALJ determined that Plaintiff retains the RFC "to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)."  (Tr. 16, 19.)  Thus, the ALJ's reliance on the Grids was proper.  Further, the ALJ properly determined that Plaintiff has no mental non-exertional limitations.  (Tr. 14–16.)  Specifically, as determined above, after considering the opinion evidence regarding Plaintiff's mental limitations, the ALJ properly determined that this evidence was inconsistent with the objective medical evidence.  *See* discussion *supra* Section B.2.  Thus, the ALJ determined that Plaintiff had no mental non-exertional limitations.  (Tr. 16.)[3]  Because the ALJ found that Plaintiff had no non-exertional limitations, the ALJ's reliance on the Grids was not improper.  *See Phillips*, 357 F.3d at 1239–1240.  Plaintiff's final contention, therefore, does not warrant reversal.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1.      The decision of the Commissioner is **AFFIRMED**.

---

[3] The ALJ also concluded that Plaintiff had no physical non-exertional limitations.  (Tr. 16) (finding that Plaintiff "does not have limitation in regards to pushing and pulling nor does she have manipulative, visual, communicative, postural, or environmental limitations.").  In this appeal, Plaintiff does not argue that the ALJ erred in his findings as to Plaintiff's *physical*, non-exertional limitations, but instead argues that the ALJ erred in failing to find that Plaintiff has the *mental* non-exertional limitations discussed in Dr. Weber's and Dr. Inga's opinions.  (Dkt. 18 at 10–12.)

2.      The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida on August 16, 2016.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record

- 24 -